

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRUCE BEAUPRIE, ) | |
| ) | |
| Plaintiff ) | No. 05 C 6537 |
| ) | |
| v. ) | The Honorable William J. Hibbler |
| ) | |
| SAINT MARY'S AND ELIZABETH HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The facts in this employment discrimination lawsuit are largely undisputed. In fact, Beauprie disputes only 4 of Hospital's 59 numbered paragraphs (paragraphs 29, 31, 32, and 37). The Court, therefore, considers Beauprie to have admitted those paragraphs of the Hospital's Statement of Facts to which he fails to respond. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

Beginning in 1976, Bruce Beauprie worked as a Nuclear Medicine Technologist (NMT) at Saint Mary's and Elizabeth Hospital. (Def. 56.1(a) Statement (Def. St.) ¶ 6). Beauprie became the Lead Technologist in 1988, and his duties included ordering and administering radiopharmaceuticals to patients and day-to-day supervision of other NMTs. (Def. St. ¶¶ 6, 8). Among other rules, the Hospital required that NMTs not conduct radiologic or imaging procedures without a written order from a physician. (Def. St. ¶ 15).

On January 18, 2006, Beauprie received an order for an Indium scan from Dr. Janusz Mejer. (Def. St. ¶ 34). The next day, Beauprie attempted to order Indium from the hospital's outside pharmacy, but the pharmacy had none available for a few days. (Def. St. ¶ 35). Beauprie then

1

instead ordered Neutrospec from the pharmacy. (Def. St. ¶ 36). Beauprie told NMT Raju Perumpel that Dr. Connelly had approved the use of Neutrospec and instructed Perumpel to administer the scan using Neutrospec. (Def. St. ¶ 37).[1] After the doctor reading the scan noticed the substitution, a team comprised of the Hospital's Radiology Manager, the Director of Radiology and Scanning, and the Director of Human Resources met with Beauprie. (Def. St. ¶ 41). At the meeting, Beauprie admitted that he had knowingly substituted Neutrospec without authorization from a physician or supervisor, and was terminated. (Def. St. ¶ 41).

Beauprie appealed his termination, but that appeal was denied. (Def. St. ¶¶ 42-47). Several months after the incident, the Illinois Emergency Management Agency, Division of Nuclear Safety, found that the Hospital had violated regulatory and licensure requirements because of Beauprie's unauthorized administration of Neutrospec. (Def. St. ¶ 49). Beauprie now claims the Hospital fired him because of his age and his gender.

Beauprie has no direct or circumstantial evidence pointing directly to a discriminatory animus, and so must proceed under the familiar burden-shifting method, which requires him, among other things, to demonstrate that he was meeting his employer's legitimate expectations and that a similarly situated employer outside of the protected class was treated more favorably. *Farnell v.*

---

[1] As noted above, Beauprie disputes this paragraph. In support, Beauprie points only to page 94 of his deposition, which he fails to include with his summary judgment materials. Consequently, the Court deems paragraph 37 to be admitted. *See Raymond*, 442 F.3d at 608. In any event, Beauprie's deposition testimony is clear. When asked what he said to Perumpel, Beauprie testified that "I told him about conversation with Dr. Connelly . . . that he said we could go ahead and use the Neutrospec." (Beauprie Dep. at 91-92). And when later asked whether Perumpel placed the order, Beauprie testified, "no, I placed the order." (Beauprie Dep. at 92). And when later asked who made the decision to use Neutrospec, Beauprie responded that he did, and that he told Perumpel to use Neutrospec. (Beauprie Dep. at 92, 97). Beauprie's denial of Paragraph 37 is frivolous.

*Butler Univ.*, 421 F.3d 609, 612-13 (7th Cir. 2005); *Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005). Beauprie can do neither.

Beauprie unilaterally amended a doctor's prescription, ultimately causing the Hospital to receive notice from a regulatory body that it had violated licensure requirements. Neutrospec had limited FDA approval, which Beauprie knew at the time he substituted his own judgment for that of a physician. (Def. St. ¶ 22). Beauprie claims that he had a casual conversation with Dr. Connelly in which Dr. Connelly stated that Beauprie could use Neutrospec in place of Indium. However, Dr. Mejer, and not Dr. Connelly, was the doctor who had issued the order for an Indium scan. The Hospital had a specific rule that NMTs could not conduct radiologic procedures without *written* orders from a physician, and so Beauprie's casual conversation with Dr. Connelly is of no consequence. Further, the Hospital also had a rule prohibiting NMTs from substituting one radiopharmaceutical for another without the Hospital having issued a written protocol allowing such a substitution. (Def. St. ¶ 19). Given that Beauprie violated the Hospital's rules, administered a drug for a purpose for which it lacked FDA approval, and caused the Hospital to receive a citation from the FDA it is inconceivable that he was meeting the Hospital's legitimate expectations.

Beauprie argues that he was meeting the Hospital's expectation by pointing to the fact that Perumpel administered the injection of the Neutrospec. Beauprie argues, therefore, that the Hospital "fired the wrong guy." This argument is nothing more than a red herring. Perumpel took his instruction from Beauprie. Beauprie knew that Dr. Mejer had prescribed an Indium scan. He also knew that the Hospital had not issued written protocol allowing NMTs to substitute Neutrospec for

3

Indium.[2] (Def. St. ¶¶ 26, 44). And yet despite this knowledge, he instructed Perumpel to administer Neutrospec, falsely informing him that a doctor had cleared the substitution. Beauprie's attempt to shift blame to Perumpel is frivolous.

Even putting aside Beauprie's audacious decision to supersede a physician's orders and order a radiopharmaceutical that had limited FDA approval at the time, Beauprie cannot point to similarly situated employee's outside the protected class who were treated more favorably. Beauprie cannot point to a similarly situated employee outside the protected class who was treated more favorably. He points first to Perumpel. But Perumpel did not misread a prescription or knowingly administer the wrong radiopharmaceutical — a mistake for which the Court might imagine he would face serious discipline. Nor did Perumpel substitute his own judgment for that of a physician. Instead, Perumpel merely followed the instruction of his day-to-day supervisor — Beauprie. Beauprie also points to a female NMT, who left work early and who was late several times. Neither Perumpel or the female NMT are similarly situated because they did not engage in the same category of misconduct. *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 771 (7th Cir. 1994) (falsification of records not the same category of misconduct as alcohol-related offenses).

---

[2] Three of the paragraphs in the Hospital's 56.1 Statement that Beauprie disputes (29, 31, and 32) center around a meeting that took place six days before the incident in question. These disputes also are not material. The Hospital contends that doctors at the meeting discussed Neutrospec and its limited use. Beauprie contests the fact that this discussion occurred. Regardless of whether the discussion occurred, it is undisputed that the Hosptial had not issued a written protocol allowing Neutrospec to be substituted for Indium. In any event, as before, Beauprie's deposition testimony on the subject is clear. During his deposition, Beauprie was asked multiple times whether he came away from the meeting with an understanding that it was okay to use Neutrospec, and Beauprie testified that there was no clear decision on whether Neutrospec could be used for purposes other than to scan for appendicitis. (Beauprie Dep. at 71-72).

4

Beauprie's claim that the Hospital fired him because of his age and his gender is without merit, and the Hospital's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

12/8/06
Dated

Honorable William J. Hibbler
United States District Court